UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ERIC WARE,
                    Plaintiff,

        v.                                          07-3013

AUSTIN RANDOLPH, ED HUGGINS,
DR. OSAFO, and NURSE NEUENDOF,
C/O ENDRESS, C/O WOODS, MAJOR
RAINES, and LIEUTENANT BROWN,
                    Defendants.

MEMORANDUM OPINION AND ORDER

        Before the court are the defendants', Seth Osafo, M.D. and Tracy Neuendorf, L.P.N.,
motion for summary judgment [102], the plaintiff's response [111] and the defendants' reply
[120].

Standard

        Summary judgment "should be rendered if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material fact
and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any
discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue
of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts
that might affect the outcome of the suit under the governing law will properly preclude the entry
of summary judgment." *Anderson*, 477 U.S. at 248.

        "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must
show what evidence it has that would convince a trier of fact to accept its version of events.
*Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing
summary judgment bears the burden to respond, not simply by resting on its own pleading but by
"set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In
order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the
material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If
[the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be
entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

        Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that
would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge

1

may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Background

The plaintiff in this case has brought a cause of action against the defendants for deliberate indifference with respect to care and treatment provided to him for skin conditions he suffered while incarcerated at the Illinois River Correctional Center. Mr. Ware was transferred to
the Illinois River Correctional Center from the Hill Correctional Center on August 24, 2006. He was transferred out of the Illinois River Correctional Center to the Danville Correctional Center on April 18, 2007. The dates in question relate only to the time that Mr. Ware was incarcerated at the Illinois River Correctional Center. Accordingly, this lawsuit relates only to this eight-month period that Mr. Ware was incarcerated at the Illinois River Correctional Center. During this time, Mr. Ware presented to Dr. Osafo and Nurse Neuendorf on few occasions with complaints concerning a skin disorder on his head and on his back and arms. The evidence in this case reflects that Mr. Ware was treated with medications and was evaluated for his conditions as they were presented. Since the time that Mr. Ware has left the Illinois River Correctional Center, he is no longer under the care and treatment of these Defendants. Dr. Osafo diagnosed Mr. Ware as having dermatitis. He was treated for that condition. Ms. Neuendorf considered this condition on his back to be acne. She treated this per the protocol sheet directing care for this condition.

The defendants assert that the evidence shows that Mr. Ware's problems are not serious medical needs, despite the fact that they may be a frustration or annoyance to Mr. Ware. The defendants further assert that here is no evidence to indicate that he is at a substantial risk of serious harm. Further, the defendants assert that there is no evidence to indicate that Mr. Ware requires a certain course of medical treatment to treat his skin conditions. Therefore the defendants bring this summary judgment motion and ask that the court to enter judgment in their favor.

Undisputed Material Facts[1]

1.    The Plaintiff was incarcerated at the time he filed his cause of action against the Defendants. (See Plaintiff's Complaint.)
2.    Mr. Ware has been incarcerated at the Danville Correctional Center since April 24, 2007. (Plaintiff's deposition, p. 3.)

---

[1]All exhibits submitted by defendants and can be found attached to their summary judgment motion [102].

3.      Mr. Ware was at the Illinois River Correctional Center from either April of 2006 through April of 2007 or August 2006 through April 2007. (Plaintiff's deposition, p. 3; Exhibit A-1.)

4.      The claims against and interactions with Dr. Osafo and Tracy Neuendorf relate to the time that Plaintiff was incarcerated at the Illinois River Correctional Center.  (Plaintiff's deposition, pp. 4-5.)

5.      Mr. Ware's complaints relating to Dr. Osafo and Nurse Neuendorf relate to his skin conditions.  (Plaintiff's deposition, p. 6.)

6.      Plaintiff alleges that he is not being treated properly for his skin condition.  (Plaintiff's deposition, p. 6.)

7.      Mr. Ware suffered from this skin condition before he arrived at the Illinois River Correctional Center, according to him.  (Plaintiff's deposition, p. 7.)

8.      Mr. Ware has a skin condition on the top of his head that appears as though part of his skin has been scratched off.  (Plaintiff's deposition, p. 12.)

9.      It appears as though one layer of his skin has come off and is flaky as of the date of his deposition, August 13, 2007.  (Plaintiff's deposition, p. 12.)

10.     Mr. Ware also has a skin condition on his back and his arm.  (Plaintiff's deposition, p. 13.)

11.     The condition on his back and arm looks like acne as it is dark and is not like what is on his head.  (Plaintiff's deposition, p. 13.)

12.     However, Plaintiff does not believe the dark spots are actually acne.  (Plaintiff's deposition, p. 13.)

13.     It appears that Mr. Ware has dark spots on his back and does not look like what he has on his head.  (Plaintiff's deposition, p. 14.)

14.     The condition on Plaintiff's back is pretty much the same as what he has on his arm. (Plaintiff's deposition, p. 14.)

15.     Other than being discolored, the Plaintiff asserts that his condition itches.  (Plaintiff's deposition, p. 15.)

16.     Mr. Ware asserts that the condition on the top of his head burns when he puts water on his head.  (Plaintiff's deposition, p. 19.)

17.      As long as Mr. Ware does not touch his head or put water on it or grease on it, then he is okay.  (Plaintiff's deposition, p. 19.)

18.     Mr. Ware does not suffer from any physical problems so long as he does not aggravate the skin condition.  (Plaintiff's deposition, pp. 20-21.)

19.     Mr. Ware complains that Dr. Osafo gave him Selsun Blue after Plaintiff told him this product had not helped before. (Plaintiff's deposition, p. 22.)

20.     Mr. Ware does not recall seeing Dr. Osafo again for problems relating to his skin. (Plaintiff's deposition, p. 23.)

21.     Plaintiff asserts no one ever saw him again for this condition. (Plaintiff's deposition, p. 23.)

22.     Mr. Ware's complaint against Nurse Neuendorf is that he told her he was having a skin problem.  He admits that she gave him medical treatment.  (Plaintiff's deposition, p. 23.)

23.  Plaintiff claims that he advised her that he had tried this before and that it did not work. Plaintiff complains that he did not want to use the medicine that she was giving him. (Plaintiff's deposition, p. 24.)

24.  Plaintiff asserts that Nurse Neuendorf gave him Benzoyl peroxide.  (Plaintiff's deposition, p. 24.)

25.  The Plaintiff asserts that both on January 2 and January 5, he was given Benzoyl peroxide for his complaints.  He claims that this did not work.  (Plaintiff's deposition, p. 25.)

26.  He did not see anyone else at the Illinois River Correctional Center for this condition. (Plaintiff's deposition, pp. 25-26.)

27.  He was transferred shortly thereafter to the Danville Correctional Center.  (Plaintiff's deposition, p. 26.)

28.  The Plaintiff claims that he is not physically restricted as a result of his skin condition. (Plaintiff's deposition, p. 27.)

29.  He claims that he is embarrassed and does not like to take off his shirt because of the spots on his head and on his back.  (Plaintiff's deposition, p. 27.)

30.  Plaintiff claims that his skin condition causes itching, scratching, and bleeding from the bumps on his back.  (Plaintiff's deposition, p. 28.)

31.  The spot on Mr. Ware's head was the size of nickel when it first began at the Lawrence Correctional Center.  (Plaintiff's deposition, p. 28.)

32.  It now appears as though there is one patch that is approximately the size of a nickel and another that is the size of a quarter.  (Plaintiff's deposition, p. 29.)

33.  The skin condition does not affect Mr. Ware's ability to breath.  (Plaintiff's deposition, p. 30.)

34.  The skin condition does not affect Mr. Ware's ability to walk.  (Plaintiff's deposition, p. 30.)

35.  The skin condition does not affect Mr. Ware's ability to conduct his daily living activities other than to cause him frustration.  (Plaintiff's deposition, p. 30.)

36.  Mr. Ware now uses tar shampoo on his head. It does not make his head darker when he uses it.  (Plaintiff's deposition, p.78.)

37.  The plaintiff believes that the tar shampoo clears up the pustules.  (Plaintiff's deposition, p. 79.)

38.  Mr. Ware was diagnosed with having acne on his back when at the Western Illinois Correctional Center prior to arriving at the Illinois River Correctional Center.  (Plaintiff's deposition, pp. 78-80.)

39.  With respect to the condition on Plaintiff's head, it is not bleeding.  (Plaintiff's deposition, p. 86.)  It does not look sore, but appears that one layer is missing. (Plaintiff's deposition,pp. 86-87.)

40.  It is not flaky. (Plaintiff's deposition, p. 87.)

41.  Dr. Osafo was serving as the Medical Director in 2006 when Mr. Eric Ware was transferred to the Illinois River Correctional Center from the Hill Correctional Center on August 24, 2006. (Exhibits A and 1.)

42.  In his capacity as the Medical Director, Dr. Osafo has seen Mr. Ware as a patient. (Exhibit A.)

4

43.  The first time that Dr. Osafo personally documented examining Mr. Ware was September 21, 2006.  (Exhibits A and 2.)  His note from that date reads as follows:
M.D. Note:
S (subjective): 35-year old complaining of painful callouses to feet. Onset several months ago.  Complaining of cold for several days.  No fever.  Positive for headaches, positive for nasal congestion.
O (objective):  Throat positive for erythema (redness).  Lungs clear to auscultation bilaterally.  Heart-S1 + S2 (normal heart rhythm).  Feet multiple areas of hyperkeratinized skin to soles bilaterally.
A (assessment): 1) URI ( upper respiratory infection); 2) Plantar vulgaris.
P (plan): CTM (cold tablet) 4 times a day for 5 days.
Robitussin 200 mg qid ( 4 times per day) for 5 days - Tylenol 65 g 4 times a day for 5 days -Follow-up in 2 weeks for callous trimming. Increase fluid intake.  (Exhibits A and 2.)

44.  On September 21, 2006, Dr. Osafo saw Mr. Ware for his complaints regarding callouses on his feet.  At that time, he had no problems and no complaints with respect to his back or his head.  (Exhibit A.)

45.  The next time Dr. Osafo saw Mr. Ware was on October 5, 2006.  His note from that date reads as follows:
M.D. Note.
S (subjective): 35-year old black male here for callous trimming. No new complaints.
O (objective): Feet: multiple, hyper-keratinized skin to soles bilaterally.
A (assessment): Plantar vulgaris.
P (plan):  Callouses trimmed. Follow up 8 weeks.  (The nurse noted the next available appointment was December 11, 2006.)  (Exhibits A and 3.)

46.  When Dr. Osafo saw Mr. Ware on October 5, 2006 for his follow-up visit, he was treated for his callouses on his feet and had no new complaints.  (Exhibit A.)

47.  The next time Dr. Osafo saw Mr. Ware was on October 31, 2006, in the chronic clinic for evaluation of Mr. Ware's asthma.  (Exhibits A, 4, and 5.)  On that date, Mr. Ware had no complaints and was evaluated for his asthma condition.  His medications were renewed for that condition.  There are no notations in Dr. Osafo's records referencing any additional skin problems.  (Exhibits A, 4, and 5.)

48.  The next time Dr. Osafo saw Mr. Ware personally was on December 11, 2006.  (Exhibits A and 6.)  His note from that date reads as follows:
M.D. Note.
S (subjective): 35-year old black male here for evaluation of plantar callous and scalp dermatitis.
O (objective): Scalp: multiple areas of scaling and erythematous macules and papules.
Feet: multiple areas of hyper-keratinized skin to soles bilaterally.
A (assessment): 1) scalp dermatitis; 2) plantar vulgaris.
P (plan): Callous trimming done.
Selsun Blue shampoo - apply 3 times per week for 4 weeks - follow up 8 weeks for callous trimming 2/5/07. (Exhibits A and 6.)

5

49.    On December 11, 2006, Dr. Osafo saw Mr. Ware for follow-up of his callouses, as well as a new complaint of scalp dermatitis.  At that time, Dr. Osafo documented that Mr. Ware received care for his callouses and recommended that he use Selsun Blue shampoo for his dermatitis.  (Exhibit A.)

50.    In Dr. Osafo's opinion, scalp dermatitis is not a serious medical need.  While the condition may cause some scaling and possibly redness and itching, it is not going to cause a serious medical condition affecting any of Mr. Ware's internal organs or his ability to function on a daily basis.  This condition is a skin condition and is no more medically serious than acne or any other rash.  In general, the symptoms are cosmetic and not physically debilitating.  (Exhibit A.)

51.    The next time Dr. Osafo saw Mr. Ware was April 10, 2007 in the asthma clinic. (Exhibits A and 7.)  At that time, Dr. Osafo evaluated Mr. Ware for his asthma condition. He did not make any complaints to Dr. Osafo at that time.  Dr. Osafo noted Mr. Ware's use of his inhaler, renewed Mr. Ware's medication of Albuterol, and recommended that Mr. Ware follow up at the next asthma clinic.  Dr. Osafo evaluated Mr. Ware by providing a neurologic exam, a cardiovascular exam, a respiratory exam, as well as examining his abdomen, in addition to the specific examination for evaluating Mr. Ware's asthma condition. Dr. Osafo found no significant abnormalities as a result of his examination.  (Exhibits A and 8.)

52.    From the records Dr. Osafo has reviewed, Mr. Ware appears to have been transferred to the Danville Correctional Center on April 18, 2007.  (Exhibits A and 9.)

53.    Between April 10 and April 18, 2007, Dr. Osafo had no interaction with Mr. Ware. (Exhibit A.)

54.    In Dr. Osafo's opinion, Mr. Ware was treated appropriately by Dr. Osafo for each and every medical condition he presented to Dr. Osafo, including, but not limited to, his dermatitis.  (Exhibit A.)

55.    As indicated herein, Mr. Ware is no longer an inmate at the Illinois River Correctional Center and is now incarcerated at the Danville Correctional Center.  Accordingly, Dr. Osafo does not have immediate access to Mr. Ware's complete medical chart.  (Exhibit A.)

56.    Dr. Osafo has been provided copies of Mr. Ware's chart as it pertains to the dates wherein he was incarcerated at the Illinois River Correctional Center.  (Exhibit A.)

57.    The complaints made by Mr. Ware regarding his dermatitis were treated appropriately. Mr. Ware's skin condition does not present a serious medical need.  (Exhibit A.)

58.    Treating dermatitis with Benzoyl peroxide and medications contained in Selsun Blue shampoo are appropriate medications for this type of condition as they tend to alleviate the scaling and redness.  There is often no known cause for these problems.  Various medical treatments can be tried, but are not always effective.  (Exhibit A.)

59.    Mr. Ware's skin conditions are not contagious. Mr. Ware's skin conditions were caused by an unknown source.  He is not at risk of developing any serious medical problems from his skin condition.  Other inmates are not at risk of developing similar problems by coming into contact with Mr. Ware.  (Exhibit A.)

60.    As indicated herein, skin conditions such as acne and dermatitis are not serious medical needs despite the fact that such conditions may be annoying to the patient.  In addition,

6

these conditions cannot always be cured regardless of the amount of topical ointments provided. Each patient responds differently to different types of medications. (Exhibit A.)

61.  Mr. Ware was treated pursuant to Dr. Osafo's medical judgment. He has suffered no physical injuries as a result of the treatment being provided to him. (Exhibit A.)

62.  Dr. Osafo has also reviewed the medical records from January 2, 2007 through April of 2007 authored by Defendant Tracy Neuendorf. (Exhibit A.)

63.  Her records reflect that Mr. Ware made complaints regarding a skin condition which was noted to be acne. (Exhibits A and 10.) Nurse Neuendorf followed the protocol for that condition and noted her observations. She did not refer Mr. Ware to Dr. Osafo for further assessment. Dr. Osafo concurs with her assessment of Mr. Ware and her treatment of him. Based on her assessment, an M.D. referral was not necessary. (Exhibit A.)

64.  The medical records reviewed and relied upon by Dr. Osafo in making his Affidavit in support of this Motion for Summary Judgment were kept in the ordinary course of business. (Exhibit A.)

65.  During her employment as a nurse at the Illinois River Correctional Center, Nurse Neuendorf treated a patient by the name of Eric Ware. (Exhibit B.)

66.  Nurse Neuendorf has reviewed Mr. Ware's medical records and saw that the first time she saw Mr. Ware was on January 2, 2007. (Exhibits B and 10.)

67.  Nurse Neuendorf's note from that date indicates that Mr. Ware complained to her of problems which she assessed as being acne. (Exhibit B.)

68.  It was Nurse Neuendorf's assessment that Mr. Ware suffered from an acne-type problem. Accordingly, she followed the protocol in place for acne. (Exhibit B.)

69.  Nurse Neuendorf did not refer Mr. Ware to a physician as he did not suffer from conditions which would require that a referral be made. These conditions are noted on Exhibit 10, as follows:
Pustules, nodules, cysts, inflammation, scarring, drainage or a chronic problem that has not responded to treatment, allow 4 weeks. (Exhibits B and 10.)

70.  In Nurse Neuendorf's assessment and observation, Mr. Ware did not suffer from any of the conditions identified therein. Mr. Ware had not yet been treated for this problem at the Illinois Correctional Center for at least or more than four (4) weeks as of January 2, 2007. (Exhibit B.)

71.  Nurse Neuendorf treated Mr. Ware pursuant to the protocol. (Exhibit B.)

72.  Nurse Neuendorf noted that Mr. Ware appeared to have some form of acne all over his back. He complained that the Selsun Blue shampoo didn't work. Nurse Neuendorf provided him with Benzoyl peroxide twice a day for two weeks pursuant to the protocol. (Exhibits B and 10.)

73.  The next time Nurse Neuendorf saw Mr. Ware was on January 5, 2007. At that time, she saw Mr. Ware on the nurse sick call. Her note from that date reads as follows:
LPN Note - NSC (Nurse Sick Call)
S (subjective): "I have this discolored areas on my head it ain't normal. I need to see the doctor and these areas on my back and arms aren't any better."

7

O (objective):  Complains of discolored areas on scalp.  No flaking or scaley skin, keeps head shaved.  Has a few lighter skin areas to top of head.  No pattern to areas noted.  Has only had medication for acne areas on arms and back.  No changes for 2 days.

"I also have cold symptoms still that I need treatment for."  No nasal congestion present.  Offender stated "I'm indigent, I have no money to buy anything and I believe you are treating me with deliberate indifference."  After leaving room, states loud enough for all to hear, "I guess I'll just have to file a lawsuit."  No evidence of infection, symptoms of cold complaints.

P (plan): Patient education. (Exhibits B, 11, and 12.)

74.    On January 5, 2007, Mr. Ware returned to the healthcare unit for complaints regarding the discolored areas on his head, as well as complaints that he was suffering from some sort of cold symptoms.  Nurse Neuendorf did not observe any cold symptoms. Mr. Ware had no nasal congestion and no evidence of infection or symptoms of a cold.  Accordingly, he was not provided with any medication for that condition as no medical need was observed by her.  (Exhibit B.)

75.    With respect to Mr. Ware's skin condition, he was treated appropriately per the protocol.  Patient education was given to the Plaintiff consistent with what is contained on Exhibit 10.  Nurse Neuendorf advised Mr. Ware of the following:
- Avoid greasy food and chocolate
- Drink plenty of water
- Identify factors to avoid as noted above
- He was advised that vigorous washing may worsen his lesions
- Keep hands away from areas
- Avoid picking
- Continue proper skin indefinitely
- If no improvement after 4 weeks, resubmit request for sick call.  (Exhibits B, 10, and 11.)

76.    In Nurse Neuendorf's opinion, Mr. Ware's skin condition did not appear to be a serious medical need.  His skin problem appeared to be very minor and was not causing any significant medical problems.  In fact, his condition did not warrant referral to a physician in Nurse Neuendorf's opinion at that time.  (Exhibit B.)

77.    The next time Nurse Neuendorf saw Mr. Ware personally was on April 8, 2007.  On that date, she saw Mr. Ware for cold-related complaints (sinusitis).  (See protocol sheet completed on that date, Exhibit 13.)

78.    Pursuant to this form, Nurse Neuendorf documented the following:
S (subjective): "I need cold pills".
How long have you had cold? "Just got it."
Is there nasal congestion, runny nose, or post nasal drip? "None present".  Selfreports nasal congestion.
Any chest congestion, cough (productive or non-productive)?  "No."
If productive – color and amount. N/A..
Any pain in throat, ears or face? Denies.
Denies any past history of sinusitis or allergies.
Any headache?  "Sometimes."

8

O (objective):  Mr. Ware's temperature, pulse, respirations, blood pressure, and weight were not completed as Mr. Ware was in segregation at the time his complaints were noted.  I did not examine his ear canals for redness as he was in segregation.  Mr. Ware kept referring to his current lawsuit filed against me and others when I advised him that he had no current symptoms and that to treat him I needed to document symptoms.  (Exhibits B and 13.)

79.  Nurse Neuendorf's plan therefore documents that there was no need to refer Mr. Ware to the physician as he had no symptoms.  She advised him to increase his fluid intake, not to smoke, and to follow up if he had symptoms.  (Exhibits B and 13.)

80.  At the time Nurse Neuendorf spoke with Mr. Ware, he reported no symptoms to her, but only advised that he needed cold pills.  There was nothing she could observe that required that medication be given.  (Exhibit B.)

81.  Nurse Neuendorf saw Mr. Ware again on April 8, 2007 at 3:20 p.m., which is 3 hours and 20 minutes after her last visit with him.  Her note from that date reads as follows:
S (subjective): "Hey nurse, I'm ready."
O (objective):  Overheard stating to another offender on wing, "She f***'ed up again.  I guess she likes losing when she gets sued."  Offender only able to produce minimal amount of clear, thin nasal discharge.  Wet spot only on toilet tissue.  "Yeah, I heard cussing at the other guys on the hall, I'll tell them how to get you back."  This nurse was witnessed by staff and other offenders.  No cursing.
A (assessment): Complains of need for CTM's (cold tablet medications).
P (plan): Cold tablet medications twice orally 2 times a day for 3 days. (Exhibits B and 14.)

82.  When Nurse Neuendorf observed Mr. Ware approximately 3 and a half hours later, he was able to produce some amount of nasal discharge.  Accordingly, she provided Mr. Ware with three days' worth of cold tablets to be taken orally two times per day for three days.  He was not charged a $2.00 co-pay. (Exhibits B and 14.)

83.  The last time Nurse Neuendorf saw Mr. Ware in her capacity as a nurse was on April 16, 2007 at 10 a.m.  At that time, he made complaints to her of a headache.  Her note from that date is documented as Exhibit 15, which is a protocol sheet.  Her note reads as follows:
S (subjective): "I got migraine headaches."
Any recent head trauma, seizures, migraines, allergies, HTN, stress?  Denies trauma, complains of allergies.  Able to touch your chin to your chest without opening your mouth?  (No answer.) Are you drowsy or confused?  No.  Was there an aura prior to onset?  No.  Where is the pain (is the pain generalized or localized around the eyes, ears, throat)?  From here to here (pointing to forehead and back of head).  Describe the pain: I told you migraine."  Is there nausea, vomiting, dizziness, blurred vision, diplopia or photophobia?  Denies.  Ho long have you had the headache?  For a while.  Do you have history of similar symptoms?  "Yes and the Tylenol didn't help."  If so, what treatment is effective?  Complains no relief with Tylenol.  What recent medication has been taken?  Tylenol.
O (objective): Temperature, pulse, respirations, blood pressure, and weight were not completed as Mr. Ware was in segregation at the time his complaints were noted.

9

Visual acuity - denies changes. PERRLA, hand grasps - within normal limits.
A (assessment): Headache.
P (plan): No M.D. referral. I advised that he would be referred to the M.D. sick call if symptoms persisted or intensified.  I also gave him Advil 200 mg 2 orally twice per day as needed for 3 days.  (Exhibits B and 15.)

84.   Nurse Neuendorf's visit with Mr. Ware on April 16, 2007 and her visit with him on April 8, 2007 made no reference to Mr. Ware's complaint regarding his skin condition.  She treated him for cold symptoms and a migraine headache, respectively.  (Exhibit B.)

85.   Nurse Neuendorf had no other direct contact with Mr. Ware regarding his complaints of skin problems.  (Exhibit B.)

86.   Subsequent to Nurse Neuendorf's last encounter with Mr. Ware, he was transferred to the Danville Correctional Center, as is documented by his health status transfer summary.  (Exhibits B and 9.)  This document suggests Mr. Ware was transferred to Danville on April 18, 2007.

87.   Nurse Neuendorf has had no further contact with Mr. Ware outside of this lawsuit.  (Exhibit B.)

88.   Nurse Neuendorf does not recall having any interactions with Mr. Ware outside of what has been documented in his medical records.  (Exhibit B.)

89.   Nurse Neuendorf relied upon her medical training and expertise in assessing and evaluating Mr. Ware's complaints.  (Exhibit B.)

80.   In Nurse Neuendorf's opinion, Mr. Ware's skin condition was not a serious medical need. It did not require a referral to a physician pursuant to her assessment. At no time did she feel Mr. Ware's skin condition required more medical attention than had been provided to him.  Nurse Neuendorf treated Mr. Ware each time he made complaints that she could verify.  (Exhibit B.)

The court notes that the plaintiff disputes facts 44 through 47, 50, 51, 54, 57, 58, 59, 60, 61, 63, 68, 69, 70. 71, 73, 75, 76, 78, 79, 80, 81, 82, 83, 84, 88 and 89.  However, he fails to comply with U. S. C. D. Local Rule 7.1(D), United States District Court Local Rule 7.1(D) requires the plaintiff, as the nonmoving party, to list by number each fact from the defendants' Undisputed Material Facts of the summary judgment motion which is conceded to be undisputed and material.  Further, the plaintiff must list by number each fact from defendants' undisputed material fact of the summary judgment motion which is claimed to be disputed.  Each such claim of disputed fact *must* be supported by evidentiary documentation, referenced by specific page.  The plaintiff has not supported his disputes with evidentiary documentation, just says they are disputed.

Further, the plaintiff lists facts 33 and 34 as immaterial stating that they would be not be relevant in a trial because plaintiff's complaint is of his skin condition.  The court disagrees with the plaintiff.  The defendants' facts 33 and 34 are material and relevant.

**Discussion and Conclusion**

3:07-cv-03013-HAB-CHE   # 151   Page 11 of 14

This case is really simple. It boils down to whether the plaintiff's skin condition was serious. Dr. Osafo diagnosed the plaintiff with scalp dermatitis. In Dr. Osafo's opinion, scalp dermatitis is not a serious medical need. The plaintiff disagrees with Dr. Osafo's opinion, however, the plaintiff is not a medical expert and he provides no documentation from any medical expert supporting his own opinion. Furthermore, the plaintiff complaint is similar to that alleged in *Ware v. Fairman,* 884 F. Supp. 1201, 1205 (1995) where the plaintiff alleged that he requested treatment and medications for medical conditions (i.e., the rash, acne and flu). The district court held that those conditions were not serious.

In order to prove his cause of action, the plaintiff must prove deliberate indifference to a serious medical need. At a minimum, this requires actual knowledge of impending harm which is easily preventable so that a conscious, capable refusal to prevent harm can be inferred from the
defendant's failure to prevent it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985).

The plaintiff failed to establish that he suffered from a serious medical need in the context of his contact with Dr. Osafo and Ms. Neuendorf. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Chapman v. Keltner*, 241 F.3d 842, 845, quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).. An objectively serious condition also presents itself if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez*, 111 F.3d at 1373.

The plaintiff failed to establish that the defendants acted with a conscious disregard to a serious medical need. It is undisputed that states have a duty to provide adequate medical care to incarcerated persons. *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002.) As a result of this duty, a prison official may be held accountable if found to be deliberately indifferent to a serious injury or medical need of an inmate as such would violate the Eighth Amendment right to be free from cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). In order to prove such cause of action, however, the plaintiff must show that the need is objectively serious, and that the official must have personal knowledge of the risk and consciously disregard it. *Henderson v. Sheehan*, 196 F.3d 839, 845 (1999).; *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997). Deliberate indifference is more than mere negligence and approaches intentional wrongdoing. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). In addition, the exercise by a physician of his professional judgment does not constitute deliberate indifference. *Youngberg v. Romeo*, 457 U.S. 307, 322-323 (1982).

The Eighth Amendment does not require that prisoners receive "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also, Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003). Rather, inmates are entitled only to "adequate medical care." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002). Specifically, the Eighth Amendment does not

entitle an inmate to demand specific care.  Medical decisions such as whether one course of treatment is preferable to another is beyond the Eighth Amendment's purview.  Additionally, the Eighth Amendment is not a vehicle for bringing medical malpractice claims.  *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).  It should also be noted that inappropriate medical treatment based on pure negligence, or even a serious of purely negligent acts is not the same as indifference to a serious medical need.  *Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir. 1994).  An inmate has the right to adequate medical care.  He does not have the right to determine the type and scope of the medical care he personally desires.  A difference of opinion between a physician and a patient does not give rise to a constitutional right, nor does it state a cause of action under § 1983.  *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).  *See also, Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006).

Inattention to a medical condition amounts to a constitutional violation only where the medical condition is serious.  *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991).  Again, the deliberate indifference standard encompasses only "wanton infliction of unnecessary pain" and not accidental or inadvertent failure.  *See, Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  The plaintiff in this case asserts that Dr. Osafo and Nurse Neuendorf were deliberately indifferent

to his serious medical needs.  However, the court finds the defendants are entitled to summary judgment as  the plaintiff is unable to establish the first element of his case, a serious medical need.  As stated above, the plaintiff may only bring a cause of action under § 1983 for deliberate indifference by proving that a defendant was deliberately indifferent to a serious medical need.  This requires the plaintiff to first establish that he suffered from a serious medical need.  The plaintiff in this case admits that his claims against the defendants relate to a skin condition which exists on his back and arms, as well on the top of his head.  There is no medical evidence or any other evidence other than complaints by the plaintiff to suggest that he suffers from a serious medical need. "Every claim by an inmate that he has not received adequate medical attention does not constitute a violation of the Eighth Amendment."  *Ware v. Fairman*, 884 F.Supp. 1201, 1205 (1995), *citing Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291 (1976).  The plaintiff in this case suffers from a skin condition, but there is no evidence to indicate that it is a serious condition.  The plaintiff's medical condition is a skin problem which poses no serious threat to the plaintiff's medical and physical health.  The medical condition complained of is similar to that referenced in *Ware v. Fairman*, wherein the plaintiff complained that he suffered from a rash and acne.  The court found as a matter of law that these conditions are not serious ones.  Accordingly, in that case, the plaintiff alleged that there was a refusal to provide rash and acne medication.  The court found that these conditions were not sufficiently harmful to evidence deliberate indifference to a serious medical need.  *Id.*, at 1026.

In this case, the plaintiff confirms that he had minimal contacts with both Dr. Osafo and Nurse Neuendorf.  The plaintiff also admits in his deposition testimony, as is supported by the medical records, that when he was seen by each of the defendants, they provided him with care and treatment for the condition presented to them.  The plaintiff claims that he was not satisfied with the medication and treatment provided to him, but no more.  Again, there is no evidence to indicate that these skin conditions are serious ones.  According to Dr. Osafo, the condition is not

serious and is not contagious. Dr. Osafo asserts that the medications provided to the plaintiff are appropriate for the diagnosis of dermatitis and further that not all patients respond positively to medications. It is common knowledge that individuals with acne-type problems do not always respond positively to medications despite the amount of treatment provided. As the plaintiff is not at risk of substantial harm from this condition, no deliberate indifference can be found.

Further, the defendants point out that the plaintiff has been transferred to another facility, his condition continues to exist despite the fact that he is being treated with tar soap, which he believes has helped the condition. The plaintiff admits that his condition is the same or a little bit worse now that he is at the Danville Correctional Center despite the fact that he is being treated in the manner he prefers (the tar soap). The plaintiff admitted that he suffered from no physical disability as a result of his condition. Therefore, the plaintiff is not entitled to claim mental or emotional injuries in the absence of a concurrent physical one. Accordingly, the defendants are entitled to judgment as a matter of law.

As the defendants have pointed out, the plaintiff does not suffer from a serious medical need. Because there is no serious medical need involved, there can be no deliberate indifference. Even assuming that the plaintiff's skin condition constituted a serious one, there is no evidence of deliberate indifference either. Each of the defendants treated the plaintiff with respect to the symptoms provided to them. The plaintiff's deposition testimony confirms that he is merely dissatisfied with the treatment provided to him. There is no evidence to indicate that the treatment given to him was a substantial departure from the standard of care. What the plaintiff was given may not be what the plaintiff wanted, but it was an appropriate option for treating the plaintiff's condition despite the fact that the plaintiff was not happy with the results. The plaintiff is unable to establish the elements of his case. The facts are undisputed that the plaintiff made complaints in late 2006 and early 2007 with respect to a skin condition on his back and his head. The plaintiff was treated for those conditions on each occasion he presented them to the defendants. At subsequent times, he had appointments with the defendants, but did not always make reference to his skin condition. The evidence reflects that the plaintiff was treated appropriately and was treated each time he was seen for his complaints. At no time did anyone suggest that the plaintiff's skin condition constituted a serious medical need which posed a substantial risk of harm if it was not eliminated. Unfortunately, the plaintiff appears to suffer from an acne-type of condition on his back and some other sort of dermatitis on his head which has not cleared up as quickly as the plaintiff would like. Medicine is not an exact science and unfortunately, complete cures are not always attainable. As the plaintiff is not at substantial risk of harm, there can be no deliberate indifference in this case.

**It is therefore ordered:**

**1.**     Pursuant to Fed. R. Civ. Pro. Rule 56(c), the defendants' motion for summary judgment [102] is allowed.. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56 at the close of this case.

2.      If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 24th day of September 2008.


                          **s\Harold A. Baker**
            _____
                           Harold A. Baker
                     United States District Judge